IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| John Seabrooke, | C/A No. 6:24-cv-05120-RMG-KFM |
| Plaintiff, | **REPORT OF MAGISTRATE JUDGE** |
| vs. | |
| C/O Miller, | |
| Defendant.[1] | |

This matter is before the court on a motion for summary judgment filed by defendant C/O Miller (doc. 43). The plaintiff, a state prisoner who is proceeding *pro se* and *in forma pauperis*, filed this action pursuant to 42 U.S.C. § 1983 regarding events that occurred while he was a pretrial detainee in the Barnwell County Detention Center ("the Detention Center"). Pursuant to the provisions of 28 U.S.C. § 636(b), and Local Civil Rule 73.02(B)(2)(d) (D.S.C.), this magistrate judge is authorized to review all pretrial matters in cases filed under 42 U.S.C. § 1983 and submit findings and recommendations to the district court.

## I. BACKGROUND

The plaintiff filed his original complaint on September 19, 2024 (doc. 1) and an amended complaint on October 25, 2024 (doc. 6). He filed a second amended complaint on February 10, 2025 (doc. 26). After initial review of the plaintiff's second amended complaint, the undersigned issued an order on February 14, 2025, authorizing service of process of the plaintiff's failure to protect claim against C/O Miller and a report and recommendation recommending that the plaintiff's other claims be dismissed (docs. 28, 30). On March 10, 2025, the Honorable Richard M. Gergel, United States District Judge,

---

[1] This caption has been updated to reflect the current parties to this action, per the plaintiff's amended complaint dismissing defendant Barnwell County Detention Center (doc. 6) and the order dismissing defendants Tahira Thomas and Sgt. Priester (doc. 33).

adopted the report, leaving only the plaintiff's failure to protect claim against C/O Miller pending in this action (doc. 33).

In his second amended complaint, the plaintiff alleges that inmate Deveon Belk ("Inmate Belk")[2] raped him in their cell on March 10, 2024 (doc. 26 at 4–7). The plaintiff contends that on that date, Inmate Belk asked the plaintiff to engage in a sexual act, which the plaintiff declined (*id*. at 6–7). The plaintiff claims that Inmate Belk insisted on the requested sexual act, which caused them to fight (*id*. at 7). The plaintiff alleges that he was knocked out in the fight and woke up to find he had been violated (*id*.). The plaintiff states that he was then forced to perform a sex act on Inmate Belk (*id*.). The plaintiff alleges that he tried to tell C/O Miller about what happened that night, but she walked away and it "happen[ed] again that night" (*id*.). When the plaintiff told someone the next morning about the incident, he was transported to the hospital (*id*. at 7–8). The plaintiff's alleged injuries include post-traumatic stress disorder and nightmares, as well as a sexually transmitted disease (*id*. at 6). The plaintiff seeks monetary damages (*id*.).[3] C/O Miller filed an answer on March 25, 2025, denying the allegations and raising various affirmative defenses, including qualified immunity and the plaintiff's failure to exhaust administrative remedies (doc. 36).

On May 9, 2025, C/O Miller filed a motion for summary judgment (doc. 43). On May 12, 2025, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the motion for summary judgment procedure and the possible consequences if he failed to respond adequately (doc. 44). The plaintiff filed a motion for extension of time to respond to the motion for summary (doc. 46), and the court extended his response deadline to August 8, 2025 (doc. 56). On July 10, the plaintiff filed a second motion for extension of time (doc. 60), but the court denied it as moot and ordered the

---

[2] The plaintiff calls the inmate "Belton" (doc. 26 at 6), but the record evidence shows that his name was actually "Belk" (doc. 43-2 at 1).

[3] The plaintiff also sought to have his criminal charges dropped, but the court dismissed this request for relief (*see* docs. 30 at 6; 33).

Clerk's Office to re-send the original extension order to the plaintiff (doc. 61). The plaintiff timely filed his response to the motion for summary judgment on July 30, 2025, but did not provide any evidence in support of his claim (doc. 64). Accordingly, this motion is now ripe for review.

## II. FACTS PRESENTED

As noted above, only the plaintiff's failure to protect claim against C/O Miller remains for consideration (*see* docs. 30, 33). The record evidence shows that on February 19, 2024, at about 11:24 p.m., C/O Miller was conducting a security check and sweeping trash when the plaintiff gestured for her to come to his cell (doc. 43-8 at 1). C/O Miller testified that she stepped toward the plaintiff's cell and twice asked the plaintiff what he wanted (*id.* at 1–2). The plaintiff never told her what he wanted and gave no indication that he had been harmed or was in danger of harm, and C/O Miller perceived no emergency situation (*id.* at 2). She conducted another security check around 12:00 a.m. and other security checks throughout the remainder of her shift and never perceived any problem with the plaintiff (*id.*; doc. 43-3 at 9–10). He never tried to communicate with her again during this shift (doc. 43-8 at 2).

On February 20, 2024, the plaintiff gave Deputy Stephanie Williams a note stating that he had been raped and wanted to be removed from his cell (doc. 43-6 at 1; doc 43-7 at 1). The note reached the Detention Center's director, Tahirah Cohen, and the plaintiff was taken to the medical area and sent to the hospital (doc. 43-2 at 2). C/O Miller testified that she was informed on February 20, 2024, that the plaintiff alleged he had been raped the night he gestured to her (doc. 43-8 at 3). She further testified that she had no prior knowledge of any issues between the plaintiff and Inmate Belk and no reason to believe that Inmate Belk was a danger to other inmates (*id.*). The Detention Center investigated the matter (doc. 43-3 at 1), and on February 23, 2024, Inmate Belk was charged with criminal sexual conduct in the second degree in Barnwell County General Sessions Case Number 2024A0610300006 (Barnwell County Second Judicial Circuit Public

3

Index, https://publicindex.sccourts.org/Barnwell/PublicIndex/PISearch.aspx (enter Belk, Deveon) (last visited September 4, 2025)).[4]

Director Cohen oversees the Detention Center and testified about the Detention Center's grievance system (doc. 43-2 at 5). She testified that the plaintiff was aware of the grievance policy because a copy of the Detention Center's rules are given to every inmate (*id.*). The rules provide the following:

> a. If you have a problem or question, you must first contact your Housing Unit Deputy. If the deputy cannot answer the question or address the concern, you may fill out an inmate request under the appropriate category on the Kiosk.
>
> . . .
>
> c. The Housing Unit Deputy will attempt to resolve your grievance. If unsuccessful, you have the right to file a grievance within five (5) days of a grievable event. In order to file a grievance, you must complete an Inmate Grievance form under the appropriate category on the Kiosk[.]
>
> d. You will have five (5) working days after the receipt of the notice of the decision to appeal to the next level of command.
>
> e. Grievances, which are submitted to the Detention Center Captain, will be answered and the resolutions and decisions made will be final.

(Doc. 43-9 at 5, § 21). The plaintiff filed many grievance before and after this alleged incident, and a staff member answered each grievance (except for one related to his meal tray) (*see generally* doc. 43-5). Director Cohen reviewed the plaintiff's requests and testified that the plaintiff did not file "a grievance or any other type of complaint regarding the response of any officer to his alleged assault" (doc. 43-2 at 5).

In the motion for summary judgment, C/O Miller argues that the plaintiff's claim should be dismissed because the plaintiff failed to exhaust his administrative remedies, she is entitled to qualified immunity because she did not violate any of his constitutional rights, and she is entitled to Eleventh Amendment immunity as an arm of the state (doc. 43-1 at 2–3, 6–10). In his response, the plaintiff presents a demand for an out-

---

[4] *See Phillips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (stating that courts "may properly take judicial notice of matters of public record").

of-court settlement and argues that C/O Miller "could have stop[ped the rape] if she would have came and talked to [the plaintiff] and not walk[ed] away" (doc. 64 at 1). The plaintiff does not respond to C/O Miller's administrative exhaustion argument and does not produce any evidence in support of his claim (*see generally id.*).

### III. APPLICABLE LAW AND ANALYSIS

#### A.   *Summary Judgment Standard*

Federal Rule of Civil Procedure 56 states as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the

outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

### B.     Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (codified as amended at 42 U.S.C. § 1997e(a) (1996)), mandates, among other things, that prisoners "exhaust their administrative remedies prior to filing civil actions concerning prison conditions under Section 1983 or any other federal law. *See Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court"). "[T]he PLRA's exhaustion requirement is mandatory," *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 677 (4th Cir. 2005), and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002). The PLRA applies to pretrial detainees held in county detention centers. *Tate v. Anderson*, No. C/A 805-3085-HMH-BHH, 2007 WL 28982, at *4 (D.S.C. Jan. 3, 2007)*; see also* 42 U.S.C. § 1997e(a),(h) (defining the term "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program" and that it applies to all prisoners "confined in any jail, prison, or other correctional facility").

The PLRA requires "proper exhaustion" of available administrative remedies prior to filing suit. *Woodford v. Ngo*, 548 U.S. 81, 93–94 (2006). As the Supreme Court of the United States has noted, "Aggrieved parties may prefer not to exhaust administrative remedies for a variety of reasons," whether it be concerns about efficiency or "bad faith." *Id.* at 89–90. This is especially true in a prison context. *Id*. at 90 n.1. Nevertheless, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90–91.

"[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). Thus, an administrative remedy is considered unavailable when: (1) "it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that it becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 643–44 (2016).

Exhaustion is an affirmative defense; a prisoner is not required to plead exhaustion in his complaint. *Jones v. Bock*, 549 U.S. 199, 211–12 (2007); *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 681 (4th Cir. 2005). However, "[t]o survive a motion for summary judgment asserting he failed to exhaust [his administrative remedies], an inmate is required to produce competent evidence to refute the contention that he failed to exhaust." *Noe v. S.C. Dep't of Corr.*, No. 8:18-cv-00256-DCC-JDA, 2019 WL 2090564, at *3 (D.S.C. Mar. 6, 2019) (citing *Hill v. Haynes*, 380 F. App'x 268, 270 (4th Cir. 2010)), *R&R adopted by* 2019 WL 2089275 (D.S.C. May 13, 2019).

Having reviewed the evidence submitted, the undersigned finds that the plaintiff did not exhaust his administrative remedies. As discussed above, the defendant provided an affidavit from Director Cohen, a copy of the Detention Center's grievance procedure, and copies of the plaintiff's grievances (docs. 43-2, 43-5, 43-9). None of his grievances refer to the alleged rape nor do they reference any alleged response or failure to respond by C/O Miller (doc. 43-2 at 5, doc. 43-5). The plaintiff filed two grievances more than a year after the alleged incident requesting to move to a new cell and threatened a lawsuit "IF THIS MAN PUTS HIS HANDS ON ME" and stating that he does not "FEEL SAFE IN THE SAME ROOM WITH THIS MAN" (doc. 43-5 at 64–65). However, it is unclear what "man" he is referencing in the grievances and whether C/O Miller was involved. Regardless, these grievances were submitted after the plaintiff filed this lawsuit, and there is no evidence that he appealed the responses to these grievances. He also filed

7

grievances asking to be removed from protective custody after the incident (*see, e.g.*, 43-5 at 38, 40–44).

In his response to the motion for summary judgment, the plaintiff does not provide any evidence or argument that he exhausted his administrative remedies (*see* doc. 41). In his second amended complaint, the plaintiff claims that he did file a grievance about this incident because he "told the capt[ain] and talk[ed] to mental health and filed charges" (doc. 26 at 9). However, he does not allege or produce evidence showing that he filed a kiosk request or formal grievance for this incident as required by the Detention Center's grievance procedure (*see* doc. 43-9 at 5). Accordingly, the undersigned finds that the plaintiff has failed to exhaust his administrative remedies and recommends that the plaintiff's failure to protect claim be dismissed for failure to exhaust. However, out of an abundance of caution, the undersigned will address the merits of the plaintiff's claim.

**C.    Failure to Protect Claim**

C/O Miller argues that the plaintiff cannot maintain his failure to protect claim when there is no evidence that she failed to act in response to a known or obvious unjustifiably high risk of harm to the plaintiff (doc. 43-1 at 6–8). The plaintiff responds that C/O Miller could have stopped the alleged rape if she would have talked to him and if she had not walked away from him (doc. 64 at 1). At all relevant times herein, the plaintiff was a pretrial detainee; thus, his claim is evaluated under the Fourteenth Amendment rather than the Eighth Amendment (which is used to evaluate conditions of confinement claims for individuals convicted of crimes). *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 243–44 (1983). The United States Court of Appeals for the Fourth Circuit held that pretrial detainees could state a Fourteenth Amendment claim for deliberate indifference to a serious risk of harm on a purely objective basis that the challenged action is not related to a legitimate non-punitive governmental purpose or is excessive in relation to that purpose. *Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023). In evaluating a failure to protect claim pursuant to *Short*, the Fourth Circuit noted that a plaintiff must allege exposure to an "objectively substantial risk of serious harm" that a reasonable official would have

8

appreciated. *Carmona v. Martin*, C/A No. 23-6930, 2024 WL 4490695, at *2 (4th Cir. Oct. 15, 2024) (internal citation omitted). "In other words, 'the test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so.'" *Brown v. N.C. Dep't of Corr.*, 612 F.3d 720, 723 (4th Cir. 2010).

A prison official demonstrates deliberate indifference if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). An inmate can, however, prove an official's actual knowledge of a substantial risk "in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 842 (internal citations omitted).

Although "prison guards have no constitutional duty to intervene in the armed assault of one inmate upon another when intervention would place the guards in danger of physical harm," the Fourth Circuit has explained that "completely failing to take any action to stop an ongoing assault on a prisoner can amount to deliberate indifference." *Raynor v. Pugh*, 817 F.3d 123, 128 (4th Cir. 2016) (citing *Odom v. S.C. Dep't of Corr.,* 349 F.3d 765, 773 (4th Cir. 2003) ("[A] correctional officer who stands by as a passive observer and takes no action whatsoever to intervene during an assault violates the [Eighth Amendment] rights of the victim inmate."); *Williams v. Mueller*, 13 F.3d 1214, 1216 (8th Cir. 1994) ("A prison official acts with deliberate indifference to an inmate's safety when the official is present at the time of an assault and fails to intervene or otherwise act to end the assault.")).

Here, there is no evidence that C/O Miller knew or should have known of a serious risk of danger to the plaintiff. C/O Miller testified that the plaintiff gestured at her to come to his cell while she was sweeping trash and doing a security check, but he never told her why he gestured to her despite her asking him twice (doc. 43-8 at 1–2). He also gave no indication that he had been harmed or was in danger of harm, and C/O Miller perceived

9

no emergency situation (*id.* at 2). She continued to perform periodic security checks that night and early morning, and there was no indication that the plaintiff was in distress (*id.*). The plaintiff baldly asserts that C/O Miller "could have stop[ped the rape] if she would have came and talked to [the plaintiff]" (doc. 64 at 1), but he does not produce any evidence showing that C/O Miller should have known that he was in danger or that she failed to protect him from future incidents. Accordingly, there is no evidence that C/O Miller violated the plaintiff's constitutional rights.

### D.     *Qualified Immunity*

In his second amended complaint, the plaintiff states that he is suing C/O Miller only in her official capacity (doc. 26 at 3). Nonetheless, C/O Miller further argues that she is entitled to qualified immunity (doc. 22-1 at 5–6). Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether qualified immunity applies, a district court must decide (1) whether any right was violated, and (2) whether that right was "clearly established" at the time of the alleged violation. *Somers v. Devine*, 132 F.4th 689, 696 (4th Cir. 2025). "The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The Fourth Circuit employs a split burden of proof for the qualified immunity defense. *Stanton v. Elliott*, 25 F.4th 227, 233 (4th Cir. 2022). "The plaintiff bears the burden of proving the first prong, and the officer bears the burden on the second prong." *Id.* (citing *Henry v. Purnell*, 501 F.3d 374, 377–78 & n.4 (4th Cir. 2007)). "If the answer to *either* is 'no,' qualified immunity bars the claim." *Gelin v. Maryland*, 132 F.4th 700, 713 (4th Cir. 2025) (emphasis added).

Here, as discussed *supra*, the plaintiff has failed to demonstrate that C/O Miller violated his constitutional rights. As the plaintiff cannot satisfy the first prong of the

10

qualified immunity analysis, to the extent the plaintiff has attempted to bring a claim against C/O Miller in her individual capacity, she is entitled to qualified immunity.

### E.    Eleventh Amendment Immunity

C/O Miller also argues that she is entitled to immunity under the Eleventh Amendment despite failing to assert it as a defense in her answer to the second amended complaint (doc. 43-1 at 2–3). The Eleventh Amendment provides: "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." U.S. Const. amend. XI. The Eleventh Amendment also precludes suits against a state by one of its own citizens. *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974). A state may only waive its Eleventh Amendment immunity "in the most unequivocal terms." *Doe v. Coastal Carolina Univ.*, 359 F. Supp. 3d 367, 378 (D.S.C. 2019). "South Carolina has not waived its Eleventh Amendment immunity for lawsuits in federal court[.]" *Id.*; *see also* S.C. Code § 15-78-20(e) ("Nothing in this chapter is construed as a waiver of the state's or political subdivision's immunity from suit in federal court under the Eleventh Amendment to the Constitution of the United States nor as consent to be sued in any state court beyond the boundaries of the State of South Carolina."). Accordingly, C/O Miller's failure to raise Eleventh Amendment immunity as an affirmative defense is not an unequivocal waiver, and the undersigned must determine whether she is an arm of the state entitled to this immunity. *See Constantine v. Rectors and Visitors of George Mason U.*, 411 F.3d 474, 481 (4th Cir. 2005) ("Like other issues relating to subject-matter jurisdiction, Eleventh Amendment immunity may be asserted at any time in litigation." (citations omitted)).

In South Carolina, county detention centers are administered by, and under the control of, the county sheriff's office. *Williams v. Dorchester Cnty. Det. Ctr.*, 987 F. Supp. 2d 690, 695 (D.S.C. 2013)*; see also Barfield v. Cunningham*, No. 8:20-cv-02388-DCN-JDA, 2021 WL 1526508, at *5 n.6 (D.S.C. Mar. 15, 2021) (stating that a suit against a detention center's nurse in her official capacity is actually against the county sheriff's office), *R&R adopted by* 2021 WL 1526486 (D.S.C. Apr. 5, 2021); S.C. Code §

24-5-10 ("The sheriff shall have custody of the jail in his county[.]"). It is well settled that county sheriffs in South Carolina are arms of the State and not county employees. *See Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996) (finding that the Greenville County Sheriff, in his official capacity, "is an arm of the state" and immune from suit). This status has been extended to other employees of the sheriff's office as well. *See McCall v. Williams*, 52 F. Supp. 2d 611, 615 (D.S.C. 1999) ("As an arm of the State, a deputy sheriff is entitled to Eleventh Amendment immunity from civil damages suits in federal court[.]"). The only allegations levied against C/O Miller arise from the performance of duties in her official capacity as a Detention Center employee. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office" and therefore "is no different from a suit against the State itself."). Therefore, C/O Miller was a state agent acting in her official capacity at all times relevant to the allegations in the plaintiff's complaint, and the plaintiff has not provided any evidence to the contrary. Accordingly, she is immune from monetary damages under the Eleventh Amendment. *See Cash v. Granville Cnty. Bd. of Educ.*, 242 F.3d 219, 222 (4th Cir. 2001) (stating that Eleventh Amendment immunity also extends to "'state agents and state instrumentalities'" (quoting *Regents of the Univ. of California v. Doe*, 519 U.S. 425, 429 (1997))).

## IV. CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the undersigned recommends that C/O Miller's motion for summary judgment (doc. 43) be granted.

IT IS SO RECOMMENDED.

s/Kevin F. McDonald
United States Magistrate Judge

September 10, 2025
Greenville, South Carolina

***The attention of the parties is directed to the important notice on the following page.***

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committees note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 250 East North Street, Room 2300
> Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).